1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

Victor Sanchez,

               Plaintiff,

   v.

Albertson's, LLC,

               Defendant.

Case No. 2:19-cv-2017-JAD-DJA

**Order
and
Report and Recommendation**

12   This is a personal injury action arising out of an umbrella that fell on Plaintiff Victor
13   Sanchez's head while he was shopping at Defendant Albertson's store.  Plaintiff sues Defendant
14   for damages, claiming that it was negligent in maintaining its premises; hiring and supervising its
15   employees; and warning Plaintiff of the dangerous condition.  Defendant moves for sanctions a
16   second time, arguing that Plaintiff has failed to comply with two court orders to produce his
17   social media accounts and texts, emails, and messages.  (ECF No. 51).  Plaintiff moves to hold
18   Defendant's experts in contempt for failing to comply with a subpoena.  (ECF No. 52).  Plaintiff
19   also moves for spoliation sanctions, asserting that Defendant sold the umbrella that fell on his
20   head.  (ECF No. 59).  Defendant moves for Rule 11 sanctions, asserting that Plaintiff's motion to
21   hold Defendant's experts in contempt was brought for an improper purpose.  (ECF No. 63).

22   Because the Court finds that Plaintiff has failed to comply with two court orders and has
23   spoliated evidence, it grants Defendant's motion for sanctions in part.  Because the Court finds
24   that Defendant's experts had an adequate excuse not to respond to Plaintiff's subpoena, it denies
25   Plaintiff's motion to hold the experts in contempt.  Because the Court finds that Defendant did
26   spoliate evidence of the umbrella and that an adverse jury instruction is appropriate, it
27   recommends granting Plaintiff's motion for sanctions in part.  Because the Court finds that
28   Plaintiff's motion to hold Defendant's expert in contempt was brought for an improper purpose, it

grants Defendant's motion for Rule 11 sanctions.  The Court finds these matters properly resolved without a hearing.  LR 78-1.

## I.      Background.

Plaintiff alleges that he was shopping in Defendant's store when he opened a freezer door, causing a patio umbrella to fall on his head, resulting in serious injuries.  (ECF No. 1 at 9).  In his initial disclosures, Plaintiff claimed $115,511.02 in past medical damages and $15,225,835.26 in future medical damages.  (ECF No. 32-17 at 14-15).  Plaintiff claims that he has sustained injuries to his back, head, hip, and neck, and has problems with his posture and feet.  (ECF No. 32-9 at 7).  Plaintiff asserts that his social life, personal relationships, and ability to work, play tennis, ping pong, softball, and lift weights have all been impacted.  (ECF No. 32-9 at 10).

### A.      Defendant's second motion for sanctions.

Plaintiff initiated this litigation on August 29, 2019.  (ECF No. 1).  Defendant served requests for production and interrogatories to Plaintiff in January of 2020 asking him to identify his social media accounts and produce posts, messages, and photos regarding his physical or emotional condition.  (ECF No. 32-6 at 5-6; ECF No. 32-8 at 11).  Plaintiff responded that he "had an active Facebook" and was in the process of gathering the documents requested.  (ECF No. 32-7 at 5-6; ECF No. 32-9 at 11-12).  A year later, after Plaintiff still had not produced the social media information requested, Defendant served more specific requests, to which Plaintiff objected.  (ECF No. 32-12 at 4-6).  Defendant then moved to compel the responses.  (ECF No. 32).

The Court granted Defendant's motion to compel in part, finding Plaintiff had been evasive in responding, but limiting the scope of certain of Defendant's requests.  (ECF No. 40).  The Court ordered Plaintiff to produce:

> complete copies of his Facebook accounts under the names "Victor Sanchez," "Vic Sanchez," and "Wayde King Water Filtration – for the Whole House," along with complete copies of his Twitter accounts under the names "Wayde King Water Filtration – for the Whole House," and "VIC" from April 14, 2017 (a year before the incident) up to and including the date that Plaintiff downloads the data.

(*Id.* at 7).  The Court ordered Plaintiff to produce all written communication including but not limited to text messages, Facebook messenger, and/or email between Plaintiff, Carrie Comrie, David Lack, Michael Escobedo, and Celia Reynolds related to the subject incident.  (*Id.* at 6).  The Court also ordered Plaintiff to provide a privilege log for any information he redacted from the production.  (*Id.* at 7).

The day these items were due, Plaintiff produced the wrong things.  He provided a few screenshots of disjointed messages, many of which were cut off, cropped, or lacked a recipient name.  (ECF No. 41-5).  He also provided the "activity log"[1] for an entirely different Facebook account titled "Vitar Sancho."  (ECF No. 41-4).  Plaintiff did not produce a privilege log.

The next day, Plaintiff's counsel emailed Defendant's counsel, explaining for the first time that Plaintiff was having difficulty accessing his accounts.  (ECF No. 41 at 9).

> The other accounts you've asked for Victor cannot access.  They have 2 factor authentication required and the authentication goes to a phone number Victor doesn't have anymore…you said you have an IT company that can help?

(ECF No. 46-3 at 4).  Defendant moved again for sanctions.  (ECF No. 41).  After reading the motion, Plaintiff's counsel sent a privilege log.  (ECF No. 46-3 at 3).  The Court granted Defendant's motion for sanctions in part, finding that Plaintiff had violated his discovery obligations and ordering him to pay for the IT company.  (ECF No. 49 at 4-5).  The Court found that evidentiary and dispositive sanctions were not yet warranted because there was a chance the IT company would be able to help Plaintiff gather the information.  (*Id.* at 4-6).  The Court noted that Plaintiff's late-produced privilege log was insufficient for its purposes.  (*Id.* at 7).

Defendant again moved for sanctions—the instant motion—after Plaintiff's counsel explained that the IT company could not access the data because the two-factor authentication

---

[1] Defendant had requested a "complete copy" of Plaintiff's accounts rather than the "activity log" and had provided detailed instructions for downloading the "complete copy" it sought.  (ECF No. 32-12 at 4 n. 1).  The Court also ordered Plaintiff to produce a "complete copy."  (ECF No. 40 at 7).

code for the accounts went to the phone Plaintiff no longer had.  (ECF No. 51-14 at 3-4).

Plaintiff's counsel further explained that the IT company could not find any emails with Carrie

Comrie on Plaintiff's new phone.  (*Id.*).  Otherwise, Plaintiff's counsel asserted that there was

nothing else to produce (despite the Court's order that Plaintiff was required to produce more

complete texts and messages because the previous production was cropped and cut off).

*Compare* (*Id.*) *with* (ECF No. 53 at 1-2, 4-6).  On October 20, 2021 Plaintiff's counsel asserted in

an email, "[r]egarding the text messages produced, nothing is cut off or cropped…I did not

withhold any responsive messages.  I produced exactly what was asked so there is no need for a

privilege log."  (*Id.*).  Communications appear to have broken down after this email and

Defendant moved for sanctions on October 25, 2021.  (ECF No. 51).

In his response to Defendant's motion, Plaintiff provided multiple explanations, many of

which he raised for the first time in his response.  (ECF No. 61).  These are organized to

correspond to the ordered discovery below:

| | |
|---|---|
| Victor Sanchez Facebook account items depicting items which show or discuss the incident, Plaintiff's injuries, or the impact of the incident on Plaintiff's personal relationships, his ability to work, or his ability | Plaintiff asserts for the first time that he gave counsel access to the account but "Plaintiff's counsel simply forgot about it and neglected to produce it…The 'complete account' for this account has been produced…"  (ECF No. 61 at 5-6).[2] |

---

[2] Plaintiff asserts that he is,

> aware of a third Facebook account, which is the one that appears to be the most concern to defense counsel.  This is the account that was previously public that Albertson's was able to download all of the posts.  This is also the account associated with the Wayde King Facebook profile.  As previously discussed, this account has two-factor authentication requiring Plaintiff to receive a text message and enter a code sent by the text message in order to log into his account…Without the phone number, it is impossible to get access to the account while two-factor authentication is active.  (ECF No. 61 at 6).

But this "third account" appears to have the same name as the one Plaintiff just produced: "Victor Sanchez."  (ECF No. 32-2; ECF No. 32-3; ECF No. 32-4; ECF No. 32-5).  Neither Plaintiff nor

| | |
|---|---|
| to engage in activities he had previously enjoyed. | |
| Vic Sanchez Facebook account items depicting items which show or discuss the incident, Plaintiff's injuries, or the impact of the incident on Plaintiff's personal relationships, his ability to work, or his ability to engage in activities he had previously enjoyed. | Plaintiff does not address this account in his response. |
| Wayde King Water Filtration – for the Whole House Facebook account items depicting items which show or discuss the incident, Plaintiff's injuries, or the impact of the incident on Plaintiff's personal relationships, his ability to work, or his ability to engage in activities he had previously enjoyed. | Plaintiff asserts that this account is associated with his private Facebook account—it is unclear which—that he can no longer access. (ECF No. 61 at 6). |
| Wayde King Water Filtration – for the Whole House Twitter account items depicting items which show or discuss the incident, Plaintiff's injuries, or the impact of the incident on Plaintiff's personal relationships, his ability to work, or his ability to engage in activities he had previously enjoyed. | Plaintiff asserts for the first time that "[t]he Wayde King Twitter account is associated with an email that does not belong to Plaintiff and, therefore it is not his and he has not [sic] access to it so there is nothing to produce." (ECF No. 61 at 5). |
| VIC Twitter account items depicting items which show or discuss the incident, Plaintiff's injuries, or the impact of the incident on Plaintiff's personal relationships, his ability to work, or his ability to engage in activities he had previously enjoyed. | Plaintiff asserts for the first time that "there was no activity on the page since 2013, thus there were no responsive documents for this item." (ECF No. 61 at 4) |

---

Defendant address this discrepancy and sifting through the parties' motions and exhibits at length has not illuminated it for the Court.

| | |
|---|---|
| Text messages, Facebook messages, and/or emails with Carrie Comrie relating to this subject incident. | Plaintiff claims to have produced the entirety of his email chain with Comrie but that his messages with her (that she referenced in her deposition) "must have been on phones Plaintiff had prior to the current phone.  As Mr. Sanchez set forth in his declaration, given his financial struggles following his injury, he has had several phones and numbers over the years that are no longer available for various reasons."  (ECF No. 61 at 4). |
| Text messages, Facebook messages, and/or emails with David Lack relating to this subject incident. | Plaintiff asserts that he believes he took a screen shot of all relevant messages and that the Court "assumes that there is more to the conversation," as the Court pointed out in its order.  "[D]ue to Mr. Sanchez's phone being stolen, this message is no longer accessible." (ECF No. 61 at 4). |
| Text messages, Facebook messages, and/or emails with Michael Escobedo relating to this subject incident. | Plaintiff does not address these messages in his response. |
| Text messages, Facebook messages, and/or emails with Celia Reynolds relating to this subject incident. | Plaintiff does not address these messages in his response. |

Plaintiff ultimately places the blame for the missing data on Defendant.  He asserts that because an umbrella fell on his head at Defendant's store, he suffered a traumatic brain injury that has made it hard to find a job, which has caused him financial difficulty, which has resulted in him not paying his bills, losing his phone, having his phone stolen, and having his phone kept as collateral.  (ECF No. 61; ECF No. 61-1).  Plaintiff's motion and his declaration do not explain how may phones he has had, how many numbers he has had, or the timelines during which he lost his phones.  (ECF No. 61; ECF No. 61-1).

Defendant pokes holes in Plaintiff's explanations in reply.  (ECF No. 62).  It points out that: (1) Plaintiff originally "stated his original phone was 'destroyed' (not lost)"; (2) Plaintiff accessed his "Victor Sanchez" account on March 18, 2021 (after Defendant sought the account in its February 19, 2021 requests for production) but has not attempted to log in since; and (3) Plaintiff was unemployed and diagnosed with bi-polar disorder since before the accident.  (*Id.* at 2-3).  Defendant adds that, although Plaintiff amended his privilege log after the Court pointed out its deficiencies, it still only states that certain messages are "irrelevant" without more explanation.  (*Id.* at 7).  Defendant requests case dispositive sanctions.  (*Id.* at 7).  Alternatively, it requests an adverse inference that prohibits Plaintiff from offering evidence of his subjective medical complaints and a jury instruction to disregard Plaintiff's subjective medical complaints.  (*Id.* at 8).  Defendant also asks the Court to review the produced and redacted information *in camera*.  (*Id.* at 8-9).

### B.   Plaintiff's motion to hold Defendant's experts in contempt.

Plaintiff moves to hold Defendant's experts in contempt for not responding to his subpoenas, sent by his prior counsel.  (ECF No. 5).  He explains that his counsel subpoenaed the experts on February 5, 2021, asking in relevant part for:

> Publications in which the accepted principles (including basis for test administration and interpretation) and theories upon which you relied to reach your conclusion and opinions, including professional journals, text, or published position papers emanating from seminars and/or symposiums.
>
> Any and all articles and published material authored by you, including the title, date and publishing company of any text, and the name and page numbers of any periodical which contains any article authored by you which you feel are relevant in this case.
>
> A list of ALL cases (not limited to three years) in which you have received referrals from the named defendant, or the law firm defending this case or the insurance company who engaged the law firm defending this case, specifying:
>
> >  A.   The names of the parties;
> >  B.   The amount of all monies paid to you on the case in question and from what source;

> C.   The identity of the party who retained you and whether it was plaintiff or defense.
>
> A record or records evidencing the total amount of all income received from attorneys or insurance companies for forensic work including reports, inspections, records reviews, meeting and conferences with attorneys and testimony in the prior 4 years. For clarification, this request just seeks a document showing the total amount of income received for this category of work during the requested period.

(ECF No. 52 at 3-4). Plaintiff explains that Defendant initially objected to the subpoenas on behalf of the experts. (ECF No. 52 at 2). Defendant's counsel and Plaintiff's former counsel engaged in discussions between February 19, 2021 and March 8, 2021 regarding the subpoenas. (ECF No. 52 at 2-3; ECF No. 52-13; ECF No. 54 at 3-4). However, while Defendant's counsel asserts that the parties had reached an agreement about what else the experts needed to produce and how Plaintiff's counsel would request additional items, Plaintiff's current counsel argues that the parties had only tabled the issue. *Compare* (ECF No. 54 at 9) *with* (ECF No. 52 at 2-3). On September 21, 2021, Plaintiff's counsel requested that Defendant's experts provide all the outstanding subpoenaed items. (ECF No. 52 at 3; ECF No. 52-14). The parties met and conferred, and Defendant asserted its experts would provide no further documents. (ECF No. 52 at 3; ECF No. 52-17).

In his motion, Plaintiff asserts that holding the experts in contempt is the appropriate remedy for their non-response under Rule 45. (ECF No. 52 at 4). He adds that Defendant had no standing to object on its experts' behalf and even if it did, the objections were inappropriately boilerplate. (*Id.* at 4-5). Plaintiff adds that the information sought is relevant and discoverable. (*Id.* at 5-8).

Defendant responds and notes that Plaintiff's counsel waited six months, and until the eve of the close of discovery, to bring up the subpoenas. (ECF No. 54 at 6). It adds that Plaintiff's motion for contempt is procedurally improper and a motion to compel would have been the appropriate step in requesting the documents. (*Id.* at 10-11). Defendant had standing to assert

objections on behalf of its experts, it argues, because its experts are not third-party witnesses.  (*Id.* at 11-13).   Additionally, Defendant asserts that its objections were proper.  (*Id.* at 13-17).

In reply, Plaintiff argues that he timely brought his request and motion.  (ECF No. 57 at 2).  He adds that Defendant's response did not address the issue of whether Defendant had standing to object on behalf of its expert witnesses or the issue of the boilerplate nature of its objections.  (*Id.* at 3-4).  Plaintiff concludes with his request that the Court issue an order for the expert witnesses to show cause why they should not be held in contempt.  (*Id.* at 5).

### C.   *Plaintiff's motion for sanctions.*

Plaintiff moves for sanctions, arguing that Defendant spoliated evidence by selling the umbrella that fell on his head in violation of company policy.  (ECF No. 59).  He explains that, because the umbrella is no longer available, it is impossible to know how much it weighed.  (*Id.* at 5).  This is important, Plaintiff argues, because Defendant had umbrellas weighing up to seventy pounds on display, but Defendant's expert tested a twenty-pound sample umbrella to reach the conclusion that the umbrella could not have caused a brain injury.  (*Id.* at 5).  Plaintiff thus asks for severe sanctions, arguing that dispositive sanctions are appropriate and the minimum sanction should be a rebuttable presumption instruction that: "(a) Albertsons did not comply with its legal duties and disposed of the umbrella, (b) the relevance of the umbrella; [sic] and (c) that the jury should therefore presume that the umbrella and its actual specifications were unfavorable to Albertson's and was heavy enough to cause a brain hemorrhage and traumatic brain injury to Mr. Sanchez."  (*Id.* at 10).

Defendant responds that it was not on notice of litigation at the time it sold the umbrella and thus, sanctions are unwarranted.  (ECF No. 65)  It explains that, after the umbrella fell on Plaintiff on April 13, 2018, Plaintiff handwrote a statement.  (*Id.* at 2).  However, because it was handwritten, the statement was recorded under "Victor Sandy."  (*Id.*).  After Defendant received a litigation preservation letter on April 18, 2018—identifying Victor Sanchez and dating the injury April 14th, instead of the 13th—it took Defendant two weeks to confirm that the letter was referencing Plaintiff.  (*Id.* at 3).  In that time, Defendant sold the umbrella.  (*Id.*).  Sanctions are not warranted, Defendant argues, because it had no reason to anticipate litigation when it sold the

umbrella, it did not sell the umbrella in bad faith, and its internal policies do not create a heightened standard of preservation. (*Id.* at 4-7). Regarding prejudice, Defendant explains that its expert searched for comparable umbrellas based on Plaintiff's picture of the umbrella and the shipment summary (which does not include individual umbrella weight) and concluded through testing that the umbrella that hit Plaintiff was 19.14 pounds. (*Id.* at 3-4). Defendant concludes that Plaintiff's proposed "minimal" sanctions are effectively dispositive. (*Id.* at 10).

Plaintiff argues in reply that Defendant's argument that it was not aware of potential litigation is disingenuous because it should have been easy to connect the "Victor Sandy" report with the letter from Plaintiff's attorneys. (ECF No. 67). Plaintiff adds that the list of customer claims for the store that week make it obvious that he was referencing the "Victor Sandy" report. (*Id.* at 3). Moreover, Defendant's own claim report states that the umbrella weighed seventy pounds. (*Id.* at 3). Plaintiff points out that the information about the umbrella given to Defendant's expert referenced an umbrella that Defendant did not even purchase, resulting in a fifty-pound discrepancy between what fell on Plaintiff and what the expert tested. (*Id.* at 5). Plaintiff concludes that Defendant's retention policy is relevant because—unlike a policy governing inspection or standard of care, which Defendant's cited cases discuss—a retention policy can show whether Defendant was on notice of the umbrella's relevance. (*Id.* at 6).

### D.     *Defendant's motion for Rule 11 sanctions.*

Defendants moved for Rule 11 sanctions, arguing that Plaintiff moved to hold Defendant's experts in contempt to intimidate them. (ECF No. 63). Defendant reasserts many of its arguments raised in its response to Plaintiff's motion to hold Defendant's experts in contempt. (*Id.*). It adds that, along with being intended to intimidate the experts and having no factual basis, Plaintiff's motion was mailed directly to one of the expert's home address, an improper communication. (*Id.* at 8).

Plaintiff responds and argues that the only motivation for the motion was to obtain the documents at issue. (ECF No. 69). He adds that he was required to provide the experts with notice of the contempt request and simply used the addresses provided in Defendant's initial disclosures. (*Id.* at 2). In reply, Defendant reasserts its argument that the timing—after an

1   apparent agreement and after discovery closed—and form—a motion for contempt rather than

2   one to compel—of Plaintiff's motion belie that it was well intentioned.  (ECF No. 71 at 2).

3   Defendant reiterates that a motion for contempt was improper and that communicating with its

4   experts was a violation.  (*Id.* at 3-4).

5   **II.     Discussion.**

6          ***A.     The Court grants Defendant's second motion for sanctions in part.***

7                  1.     <u>The Court denies Defendant's request for case-dispositive sanctions but</u>
                          <u>grants Defendant's request for evidentiary sanctions.</u>

8

9          Federal Rule of Civil Procedure 37(b)(2) authorizes the Court to impose sanctions when a

10  party fails to comply with a court order related to discovery.  *See* Fed. R. Civ. P. 37(b)(2).  The

11  Court will first determine whether a discovery violation occurred and second, what sanction is

12  appropriate.  *See Greene v. Wal-Mart Stores, Inc.*, No. 2:15-cv-00677-JAD-NJK, 2016 WL

13  829981, at *4 (D. Nev. Jan. 26, 2016).[3]  The sanctions available under Rule 37(b) include striking

14  pleadings.  Fed. R. Civ. P. 37(b)(2)(i)-(iii).  Courts in the Ninth Circuit apply a five-factor test

15  when deciding whether to impose the harsh penalty of case dispositive sanctions.  *See Porter v.*

16  *Martinez*, 941 F.2d 732, 733 (9th Cir. 1991).  The court evaluates: (1) the public's interest in

17  expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of

18  prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on

19  their merits; and (5) the availability of less drastic sanctions.  *Wanderer v. Johnston*, 910 F.2d

20  652, 656 (9th Cir. 1990).  The first two of these factors favors the imposition of sanctions in most

21  cases, while the fourth cuts against a default or dismissal sanction.  *Id.*  Thus, the key factors are

22  prejudice and availability of lesser sanctions.  *Id.*

23

24  _____

25  [3] Plaintiff asserts that Defendant did not properly meet and confer before bringing the motion for
    sanctions because the meet and confer should have been more complete.  (ECF No. 61 at 6).  As
    an example of this, Plaintiff argues that Defendant never brought up the difference between the

26  "activity log" and the "complete Facebook download."  (*Id.*).  But Defendant provided an
    explanation of this distinction in its requests for production.  (ECF No. 32-12 at 4 n. 1).  The

27  Court also ordered Plaintiff to produce a "complete copy" (ECF No. 40 at 7).  The Court thus
    declines to decide this motion on the meet and confer.

28

1      Courts are also empowered to impose evidentiary sanctions under Rule 37 when a party

2   fails to comply with a discovery order.  *See* Fed. R. Civ. P. 37(b)(2).  Rule 37(b)(2) contains two

3   standards—one general and one specific—that limit a district court's discretion.  First, any

4   sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim'

5   which was at issue in the order to provide discovery."  *Navellier v. Sletten*, 262 F.3d 923, 947 (9th

6   Cir. 2001).  Sanctions must bear a reasonable relationship to the subject of discovery that was

7   frustrated by the sanctionable conduct.  *See id*.  Under Rule 37(b)(2), the court may direct that

8   designated facts be taken as established for the purposes of the action, as the prevailing party

9   claims.  Fed. R. Civ. P. 37(b)(2)(i).  The Rule also permits the court to prohibit the disobedient

10  party from supporting or opposing designated claims or defenses or from introducing designated

11  matters in evidence.  Fed. R. Civ. P. 37(b)(1)(ii).

12      Here, Plaintiff has failed to comply with this Court's orders and evidentiary sanctions are

13  warranted.  The Court first ordered Plaintiff to produce nine categories of documents.  (ECF No.

14  40).  After a weak production purporting to comply with four of these categories—the text

15  messages, Facebook messages, and/or emails—the Court ordered Plaintiff to produce more

16  complete responses.  (ECF No. 49).  To date, Plaintiff has not complied with either order.[4]  Nor

17  can he, because he has lost the ability to access this information.  Thus, sanctions are warranted.

18      However, dispositive sanctions are not warranted under the Ninth Circuit's five-factor

19  test.  While the first and second factors—the age of this case and the multiple discovery motions

20  which have made the docket difficult to manage—weigh in favor of dismissal, lesser sanctions

21

22  ───────────────
    [4] Plaintiff asserts that he has produced a complete account for the Facebook titled "Victor
23  Sanchez."  (ECF No. 61 at 5-6).  As discussed more fully above, it is unclear whether this was the
    account that Defendants sought through their discovery or another account under the same name.
24  *Compare id.* at 5 (describing the "Victor Sanchez" account) *with id.* at 6 (describing a "third
    Facebook account…that was previously public").  The Court will not attempt to untangle this
25  here.  Nor does it need to.  Regardless of what Plaintiff produced from this account, he violated
    this Court's orders.  It took two Court orders for Plaintiff to produce this information, even
26  though Defendant requested social media evidence in its first requests for production in January
    of 2020.  And even if Plaintiff had—through his belated production—complied with part of the
27  Court's orders, he has failed to comply with the order in its entirety because he has not addressed
    other accounts and messages and brought up excuses for the first time for not producing others.
28

1   can address the prejudice to Defendant.  Defendant asserts that it is prejudiced in bringing its case

2   because Plaintiff's medical condition primarily consists of subjective reports, the validity of

3   which Defendant cannot discern without Plaintiff's social media or messages.  It adds that

4   Plaintiff's conduct has diminished the integrity of the judicial process.  But, while Defendant's

5   concerns are compelling, Plaintiff's social media postings and messages to friends—although

6   relevant to show the extent of his claimed injuries—are not case dispositive.  Additionally,

7   although Plaintiff does not provide evidence to support his excuses, the Court is not convinced

8   that Plaintiff destroyed access to his phones maliciously such that the integrity of the entire

9   process is threatened.

10         Lesser available sanctions of evidentiary findings are more appropriate and tailored to

11   address Plaintiff's missing social media and messaging evidence.  However, Defendant's

12   proposed sanctions—ordering "matters embraced in the Court's order located at ECF No. 40" and

13   "Plaintiff's prolific physical activities"—are too broad to be workable.  Similarly, Defendant's

14   proposal that Plaintiff be prohibited from entering and the jury be prohibited from considering

15   any evidence related to his subjective medical complaints would exclude evidence unrelated to

16   Plaintiff's social media or messages.  Instead, the Court orders that the following facts should be

17   taken as established for the purposes of this action: (1) that Plaintiff maintained his ability to

18   exercise—including using a boxing speed bag—after the subject incident on April 14, 2018[5];

19   (2) that Plaintiff's exercise habits helped alleviate symptoms of depression.[6]  The Court further

20   orders that Plaintiff may not use evidence of his social media accounts[7] or his texts, emails, or

21   messages with Carrie Comrie, David Lack, Michael Escobedo, and Celia Reynolds to support his

22   damages claim.

23

---

24   [5] ECF No. 32-2.  ("I'm working out using supplements…New speed bag, old heavy bag better

25   than nothing…")

     [6] ECF No. 32-3.  ("If I wasn't working out I would probably [be] so depressed…").

26   [7] Specifically, Plaintiff's Facebook accounts under the names "Victor Sanchez," Vic Sanchez,"

27   "Wayde King Water Filtration – for the Whole House," and "Vitar Sancho," along with his
Twitter accounts under the names "VIC" and "Wayde King Water Filtration – for the Whole

28   House."

2.      The Court denies Defendant's request for *in-camera* review.

In its reply, Defendant requests that the Court review the documents Plaintiff has produced and redacted *in-camera*.  (ECF No. 62 at 8).  However, as this Court has previously explained, *in-camera* review is generally disfavored.  *See Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 700 (D. Nev. 1994).  Because Defendant has re-raised the issue—along with raising a request for sanctions related to Plaintiff's privilege log—in reply, rather than in its motion for sanctions, the issue is not fully briefed.  It is unclear how many pages Defendant asks the Court to review, or which privileges (if any) Plaintiff has asserted over his previous and new redactions.  The Court thus denies Defendant's request with leave to re-raise the issue in a fully briefed motion.

3.      The Court grants Defendant's request for attorneys' fees.

Rule 37(b)(2)(C) provides that "in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  The fact that a party might consider its own position reasonable does not establish substantial justification.  *See, e.g.*, *Wood v. GEICO Casualty Co.*, No. 2:16-cv-00806-GMN-NJK, 2016 WL 6069928, at *2 (D. Nev. Oct. 14, 2016).  "A party's inability to pay an award of attorneys' fees is a factor that the Court may consider in deciding whether to make an award of expenses under Rule 37(a)(5)."  *Schlonbacher v. Karol Western Corp.*, 2:08-cv-01157-LDG-GWF, 2010 WL 5100840, at *4 (D. Nev. Nov. 12, 2010).

The Court grants Defendant's request for sanctions.  Plaintiff and his counsel must pay Defendant's reasonable expenses and attorneys fees incurred in bringing the instant motion.  While Defendant also requests its costs and fees in bringing its initial motion for sanctions (ECF No. 41), the Court already granted sanctions related to that motion in requiring Plaintiff to pay for an IT company (ECF No. 49).  Moreover, Plaintiff has expressed that he has limited means.  The Court thus confines sanctions to the instant motion for sanctions (ECF No. 51).

1    Plaintiff and his counsel shall both be responsible for paying Defendant's costs and fees

2    and it is up to Plaintiff and his counsel to decide how to divide the cost.  Plaintiff's counsel and

3    Defendant's counsel are also directed to meet and confer and reach an agreement on the

4    appropriate amount for this sanction.  If the parties do not reach an agreement, Defendant's

5    counsel shall file, no later than April 4, 2022, an affidavit of reasonable expenses and attorneys'

6    fees incurred in bringing its second motion for sanctions.  Defendant must show that its request is

7    reasonable.  *See Walker v. North Las Vegas Police Dep't*, No. 2:14-cv-01475-JAD-NJK, 2016

8    WL 8732300, at *5 (D. Nev. May 13, 2016).  Failure to file the affidavit within that time will

9    result in no award.  Response and reply briefs shall be due in the ordinary course.

10           **B.      The Court denies Plaintiff's motion to hold Defendant's experts in contempt.**

11          The court may hold a person in contempt if they have been served with a subpoena and

12   fail "without adequate excuse" to obey it or an order related to it.  *See* Fed. R. Civ. P. 45(g).

13   "Adequate excuse" is not a defined standard.  *See* Fed. R. Civ. P. 45 Advisory Committee's Note

14   to 1991 Amendment.  Instead, it is factually dependent.  *See Residential Constructors, LLC v. Ace*

15   *Property and Casualty Ins. Co.*, No. 2:05-cv-01318-BES-GWF, 2006 WL 8442461, at *4 (D.

16   Nev. Aug 8, 2008) (compiling cases).

17          *Residential Constructors, LLC v. Ace Property and Casualty Insurance Company* stands

18   for the proposition that whether a non-party has an "adequate excuse" for not responding to a

19   subpoena does not turn on another party's standing to object to that subpoena.  *See id.*  In

20   *Residential Constructors*, this Court determined that a non-party did not act in contempt by

21   refusing to respond to a subpoena on the grounds that the plaintiff had objected to it.  *See id.*

22   While the Court separately found that the plaintiff had standing to object, it did not find that the

23   non-party had an adequate excuse *because* the plaintiff had standing.  *See id.*

24          This distinction matters here, where Plaintiff's entire argument is that the experts did not

25   have an adequate excuse not to respond to the subpoena *because* Defendant lacked standing and

26   made improper objections to that subpoena.  But the Rule 45(g) analysis does not concern

27   Defendant's objections, only the experts' reasons for not responding, which here, are reasonable.

28   As Defendant explains, the experts did not further respond to Plaintiff's subpoenas because they

1    believed (as did Defendant's counsel) that the parties reached an agreement on February 19, 2021

2    about what else the experts needed to produce.  (ECF No. 54 at 9).  While Plaintiff now argues

3    that the parties had just tabled the issue for later, if even counsel cannot agree what else the

4    experts were obligated to produce, Plaintiff cannot reasonably ask to hold the experts in contempt

5    for not knowing either.  That the experts believed the issue resolved is an adequate excuse for

6    them not responding to Plaintiff's renewed requests for additional subpoena responses over six

7    months after they believed their obligations fulfilled.

8           Plaintiff's decision to file a motion to hold the experts in contempt, rather than moving to

9    compel, is also procedurally unsound.  Plaintiff argues that the experts' failure to respond was not

10   adequately excused *because* Defendant lacked standing and made improper objections.  But

11   Plaintiff never moved the Court to decide whether Defendant had standing or whether

12   Defendant's objections were improper.  Plaintiff now essentially asks the Court to find that the

13   experts should have known that Defendant lacked standing to object and made improper

14   objections before the Court even decided these issues.  The Court declines.  Plaintiff's motion to

15   hold Defendant's experts in contempt is thus denied.

16           *C.*      ***The Court recommends granting Plaintiff's motion for sanctions in part.***

17                  1.      The Court recommends evidentiary sanctions.

18           The Court has "inherent discretionary power to make appropriate evidentiary rulings in

19   response to the destruction or spoliation of relevant evidence."  *Leon v. IDX Sys. Corp.*, 464 F.3d

20   951, 959 (9th Cir. 2006).[8]  Spoliation of evidence includes the failure to preserve property for

21

22   ─────────────────────
     [8] Courts in this district have interpreted the 2015 Amendment to Federal Rule of Civil Procedure
23   37(e) as foreclosing a court's ability to impose sanctions for destruction of electronically stored
     information based on the court's inherent authority.  *See Snap Lock Industries, Inc. v. Swisstrax*
24   *Corp.*, No. 2:17-cv-02742-RFB-BNW, 2021 WL 864054, at *2-4 (D. Nev. Mar. 5, 2021)
     (compiling cases).  However, the Advisory Committee Notes to that amendment provide that
25   "[t]he new rule applies only to electronically stored information…"  Fed. R. Civ. P. 37 Advisory
     Committee Notes to the 2015 Amendment.  The Ninth Circuit has not addressed whether courts
26   are foreclosed from using their inherent authority to impose sanctions for the destruction of
     physical—as opposed to electronic—evidence.  In cases following this amendment, certain courts
27   in this district have continued to apply inherent authority when deciding physical evidence
     spoliation while others have postulated that the Ninth Circuit will likely apply Rule 37(e)
28   standards to physical, as well as electronic evidence.  *See Ski Lifts, Inc. v. Schaeffer*

another's use as evidence in a pending or reasonably foreseeable litigation.  *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002).  A party's duty to preserve evidence begins with the party reasonably should have known that the evidence is relevant to anticipated litigation.  *Asfaw v. Wal-Mart Stores, Inc.*, No. 2:19-cv-01292-GMN-NJK, 2021 WL 2006283, at *1 (D. Nev. May 19, 2021).

The party requesting spoliation sanctions bears the burden of establishing the elements of a spoliation claim.  *Id.*  The threshold question in a spoliation decision is whether evidence was altered or destroyed.  *See Lemus v. Olaveson*, No. 2:14-cv-01381-JCM-NJK, 2015 WL 995378, at *9 (D. Nev. Mar. 5, 2015).  If a party alters or destroys evidence, the party requesting spoliation sanctions must further demonstrate that: (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  *Asfaw*, 2021 WL 2006283, at * 1 (D. Nev. May 19, 2021).  Many courts in the Ninth Circuit hold that a "culpable state of mind includes negligence."  *Soule v. P.F. Chang's China Bistro, Inc.*, No. 2:18-cv-02239-GMN-EJY, 2020 WL 959245, at *4 (D. Nev. Feb. 26, 2020) (compiling cases).

When considering what sanction is proper upon a finding of spoliation, the court should choose the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.  *Soule*, 2020 WL 959245, at *4.  The most severe sanction is to strike the defendant's answer, which should not be imposed unless there is clear and convincing evidence of both bad faith spoliation and prejudice to the opposing party.  *See id.* (quoting *Micron*

---

*Manufacturing Co.*, No. c19-0062-JCC, 2020 WL 1492676, at *3-4 (W.D. Wash. Mar. 27, 2020) (using inherent authority); *see State Farm Fire and Casualty Co. v. General Motors, LLC*, 542 F.Supp.3d 1124, 1128 (D. Idaho June 3, 2021) (using inherent authority); *see Sherwood v. BNSF Railway Co.*, No. 2:16-cv-00008-BLW, 2019 WL 1413747, at *1 (D. Idaho Mar. 28, 2019) (stating that, "[w]hile Rule 37(e) only addresses ESI, I can think of no reason why the same principle should not govern the resolution under common law of a claim that physical evidence was spoliated.").  Given the lack of mandatory authority on this issue and that courts continue to utilize inherent authority to address spoliation of physical evidence, the Court employs its inherent authority to address the umbrella.

1    *Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1328-29 (9th Cir. 2011) (internal quotations

2    omitted)).  The middle available sanction is to order a rebuttable presumption against the

3    offending party that the evidence, if it had not been despoiled, would have been detrimental to the

4    despoiler.  *Id.*  To warrant a rebuttable presumption, the offending party must have consciously

5    disregarded its obligation to preserve lost evidence, meaning it must have willfully destroyed the

6    evidence with the intent to harm.  *Id.*

7           The least severe sanction is to enter an adverse jury instruction that an offending party

8    destroyed evidence and that the evidence was unfavorable to the offending party.  *Id.*  A finding

9    of bad faith is not a prerequisite to an adverse jury instruction.  *See id.* (quoting *Glover v. BIC

10   Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993)).  Rather, simple notice of potential relevance to the

11   litigation will suffice.  *Id.*  To ensure that a defendant is not prevented from introducing other

12   potentially relevant evidence, the instruction should be crafted to accurately refer only to the

13   information the missing items could have actually provided.  *Id.* at *6.

14          The Court finds that minimal spoliation sanctions are appropriate here and thus

15   recommends jury instructions to the District Judge.  The threshold question—whether evidence

16   was altered or destroyed—is met because Defendant sold the umbrella that landed on Plaintiff's

17   head.  Plaintiff has also demonstrated the three elements of a spoliation claim.

18          First, while the issue of whether Plaintiff demonstrated that Defendant was obligated to

19   preserve the umbrella when Defendant sold it is a close question, the Court finds that Plaintiff has

20   met his burden.  Defendant argues that it took about ten days to connect Plaintiff's litigation hold

21   letter with Plaintiff's written claim because the letter had the wrong day and because Plaintiff's

22   report was listed under "Victor Sandy" because of his handwriting.  (ECF No. 65 at 5).  While

23   this argument is compelling, it is unclear from Defendant's brief or the email showing when

24   Defendant connected the letter with the "Victor Sandy" report, that Defendant could not have

25   discovered this sooner.  As Plaintiff points out, the letter identified the store number, which store

26   had only one claim for a "Victor."  (ECF No. 65-5).  Additionally, Defendant's internal policy of

27   retaining items related to incidents is relevant to the analysis of whether Defendant had an

28   obligation to preserve the umbrella.  Considering this policy, along with the fact that the store at

1   issue only had one "Victor" report, the Court decides the close question of whether Plaintiff

2   demonstrated the first element in Plaintiff's favor.

3         Second, while the Court does not find that Defendant sold the umbrella in bad faith,

4   Plaintiff has demonstrated that Defendant was at least negligent in selling it.  Defendant points to

5   the deposition of Defendant's 30(b)(6) witness, who stated that store employees "didn't follow

6   the instructions that they're supposed to" in preserving the umbrella.  (ECF No. 59 at 3).

7   Additionally, Defendant has not provided a record of when it sold the umbrella or facts about the

8   sale.  Because negligence is sufficient to constitute a culpable state of mind, Plaintiff has

9   demonstrated the second element.

10        Third, Plaintiff has demonstrated that the umbrella would have been relevant to his claim.

11  If Defendant had preserved the umbrella, its expert could have used an exact replica to replicate

12  the accident, rather than an umbrella that may or may not have been the same weight.  The fifty-

13  pound difference between the weight Plaintiff alleges and the weight Defendant's expert used is

14  also significant.  The Court thus finds that Defendant destroyed evidence of the umbrella.

15        Considering that the first element was a close call, the Court cannot find that Defendant

16  willfully sold the umbrella with the intent to harm.  And it certainly cannot find the type of bad

17  faith that would support the case terminating sanctions or rebuttable presumptions that Plaintiff

18  requests.  Instead, an adverse jury instruction—limited only to the information the umbrella could

19  have provided (the weight range)—is more appropriate.  The Court thus recommends to the

20  District Judge to enter a jury instruction that: (1) Defendant sold the umbrella that fell on

21  Plaintiff's head; and (2) the umbrella may have weighed anywhere from twenty to seventy

22  pounds.

23              2.    The Court denies Plaintiff's request for attorneys' fees.

24        When the court imposes spoliation sanctions using its inherent powers, the court may also

25  award sanctions in the form of attorneys' fees against a party or counsel who acts in "bad faith,

26  vexatiously, wantonly, or for oppressive reasons."  *Leon*, 464 F.3d at 961.  Before awarding such

27  sanctions, the court must make an express finding that the sanctioned party's behavior amounted

28  to "bad faith."  *Id.*  Here, the Court denies Plaintiff's request for attorneys' fees because

1    Defendant has not acted in bad faith.  Because the Court has imposed spoliation sanctions using

2    its inherent powers—rather than under Rule 37—it can only impose attorneys' fees if it finds that

3    Defendant acted in bad faith.  While Defendant should have retained the umbrella that fell on

4    Plaintiff, it does not appear to have acted in bad faith when it sold the umbrella.  Attorneys' fees

5    are not warranted.

6              **D.      *The Court grants Defendant's motion for Rule 11 sanctions.***

7              Under Rule 11, by signing a motion, an attorney certifies to the court that the motion is

8    not being presented for any improper purpose, such as to harass, cause unnecessary delay, or

9    needlessly increase the cost of litigation.  *See* Fed. R. Civ. P. 11(b)(1).  Harassment under Rule 11

10   focuses on the improper purpose of the signer, objectively tested, rather than the consequences of

11   the signer's act, subjectively viewed by the signer's opponent.  *See Zalvidar v. City of Los*

12   *Angeles*, 780 F.2d 823, 831 (9th Cir. 1986) (abrogated on other grounds).  If, after notice and a

13   reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the

14   court may impose an appropriate sanction on any attorney, law firm, or party that violated the

15   rule.  Fed. R. Civ. P. 11(c)(1).

16             The Court grants Defendant's motion for Rule 11 sanctions.[9]  Defendant asserts that

17   Plaintiff's contempt motion was intended to harass its experts.  Defendant also asserts that,

18   although it served the motion on Plaintiff twenty-one days before filing it, Plaintiff did not

19   withdraw his motion.  (ECF No. 63 at 5).  While Defendant highlights the consequences of

20   Plaintiff's contempt motion—the chilling effect that the motion could have on Defendant's

21   experts—the Court instead considers Plaintiff's stated purpose for filing the motion.  Plaintiff

22   states that he "did not want to bring the motion for contempt, Plaintiff simply wanted the

23   documents that were lawfully subpoenaed."  (ECF No. 69 at 3).  But Plaintiff did not file a

24   motion to compel these documents.  Nor did he seek these documents through his motion for

25   contempt.  Plaintiff's motive—to obtain missing documents—does not square with his requested

26   _____

27   [9] Because the Court grants Defendant's motion for Rule 11 sanctions on improper purpose
     grounds, it does not reach the question of whether it was appropriate for Plaintiff to mail a copy
28   of the contempt motion to an expert's home address.

relief—to hold Defendant's experts in contempt.  The Court thus finds that Rule 11 sanctions are appropriate.  Plaintiff's counsel must pay Defendant's reasonable costs and attorneys' fees incurred in defending against the contempt motion.

Plaintiff's counsel and Defendant's counsel are directed to meet and confer regarding a reasonable amount of costs and attorneys' fees.  If the parties do not reach an agreement, Defendant's counsel shall file, no later than March 31, 2022, an affidavit of reasonable expenses and attorneys' fees incurred in defending against the contempt motion.  Defendant must show that its request is reasonable.  *See Walker v. North Las Vegas Police Dep't*, No. 2:14-cv-01475-JAD-NJK, 2016 WL 8732300, at *5 (D. Nev. May 13, 2016).  Failure to file the affidavit within that time will result in no award.  Response and reply briefs shall be due in the ordinary course.

## **ORDER**

**IT IS THEREFORE ORDERED** that Defendant's motion for sanctions (ECF No. 51) is **granted in part.**

- The following facts should be taken as established for the purposes of this action:
  - Plaintiff maintained his ability to exercise—including using a boxing speed bag—after the subject incident on April 14, 2018; and
  - Plaintiff's exercise habits helped alleviate symptoms of depression.
- Plaintiff may not use evidence of his social media accounts[10] or his texts, emails, or messages with Carrie Comrie, David Lack, Michael Escobedo, and Celia Reynolds to support his damages claim.
- Plaintiff and his counsel must pay Defendant's reasonable costs and fees incurred in bringing the motion (ECF No. 51).  Plaintiff's counsel and Defendant's counsel are also directed to meet and confer and reach an agreement on the appropriate

---

[10] Specifically, Plaintiff's Facebook accounts under the names "Victor Sanchez," Vic Sanchez," "Wayde King Water Filtration – for the Whole House," and "Vitar Sancho," along with his Twitter accounts under the names "VIC" and "Wayde King Water Filtration – for the Whole House."

amount for this sanction.  If the parties do not reach an agreement, Defendant's counsel shall file, no later than March 31, 2022, an affidavit of reasonable expenses and attorneys' fees incurred in bringing its second motion for sanctions. Defendant must show that its request is reasonable.  Failure to file the affidavit within that time will result in no award.  Response and reply briefs shall be due in the ordinary course.

**IT IS FURTHER ORDERED** that Plaintiff's motion to hold Defendant's experts in contempt (ECF No. 52) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for spoliation sanctions (ECF No. 59) is **denied in part** as it relates to Plaintiff's request for attorneys' fees and costs.

**IT IS FURTHER ORDERED** that Defendant's motion for Rule 11 sanctions (ECF No. 63) is **granted.**

- Plaintiff's counsel must pay Defendant's reasonable costs and attorneys' fees incurred in defending against the contempt motion.  Plaintiff's counsel and Defendant's counsel are directed to meet and confer regarding a reasonable amount of costs and attorneys' fees.  If the parties do not reach an agreement, Defendant's counsel shall file, no later than March 31, 2022, an affidavit of reasonable expenses and attorneys' fees incurred in defending against the contempt motion.  Defendant must show that its request is reasonable.  Failure to file the affidavit within that time will result in no award.  Response and reply briefs shall be due in the ordinary course.

## REPORT AND RECOMMENDATION

**IT IS RECOMMENDED** that Plaintiff's motion for spoliation sanctions (ECF No. 59) **be granted in part** and that the District Judge enter a jury instruction that:

- Defendant sold the umbrella that fell on Plaintiff's head; and

- The umbrella may have weighed anywhere from twenty to seventy pounds.

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days after service of this Notice.  The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985) *reh'g denied*, 474 U.S. 1111 (1986).  The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: March 3, 2022

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE